IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LEESA S. HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:12-cv-00064 |
| v. | ) | |
| | ) | Judge Nixon |
| CAROLYN W. COLVIN, | ) | Magistrate Judge Brown |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

In his January 31, 2012, Decision, Administrative Law Judge ("ALJ") K. Dickson-Grissom determined that Plaintiff Leesa S. Hayes is not disabled under the Social Security Act and denied Plaintiff's applications for disability insurance benefits and supplemental security income. (Tr. 26.[1]) Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 14), filed with a Brief in Support (Doc. No. 15), contesting the ALJ's Decision. Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion. (Doc. No. 18.) Magistrate Judge Brown issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and the ALJ's Decision affirmed. (Doc. No. 19 at 25.) Plaintiff filed Objections to the Report (Doc. No. 20) and the Commissioner filed a Response (Doc. No. 23; *see* Doc. No. 18). For the reasons stated below, the Court **ADOPTS** the Magistrate Judge's Report in part, **GRANTS** Plaintiff's Motion in part, **VACATES** the ALJ's Decision, and **REMANDS** this case to the Commissioner. The Clerk of the Court is **DIRECTED** to close the case.

---

[1] An electronic copy of the administrative record is docketed at Doc. No. 10.

1

## I. BACKGROUND

The Court adopts the facts and procedural history as stated in Magistrate Judge Brown's Report. (Doc. No. 19 at 1–15.) The Court restates the facts and procedural history below only as necessary and relevant to the resolution of the issues.

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). However, Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Therefore, the Court's review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*,

966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions than the ALJ as to the plaintiff's claim on the merits, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. ANALYSIS

Hayes states two objections to Magistrate Judge Brown's report. First, Hayes contends the ALJ erred in rejecting the opinion of Dr. Melvin Blevins because his "assessment is consistent with the medical evidence and with Ms. Hayes's hearing testimony." (Doc. No. 20 at 4.) Second, Hayes contends the ALJ erred in rejecting her testimony regarding the extent of her pain. (Doc. No. 20 at 5.) The Court addresses each objection in turn.

*A. Weight Assigned Dr. Blevins' Opinion*

Dr. Blevins examined Hayes once on October 5, 2011, and determined Hayes had exertional, postural, manipulative, and environmental limitations that prevented her from working. (Tr. 907–16.) Contrary to Dr. Blevins' findings, the ALJ determined Hayes was capable of light work. (Tr. 22.) Hayes contests the ALJ's failure to defer to Dr. Blevins' opinion.

Although ALJs must "'evaluate every medical opinion [they] receive' . . . not all medical sources need be treated equally" under the Social Security Act. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d) (2012)). The opinions of examining, non-treating medical sources are "entitled to no special degree of deference" from the ALJ. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Furthermore, the ALJ is not required to give "good reasons" for the weight assigned an examining, non-treating source opinion. *Smith*, 482 F.3d at 876. However, the ALJ must consider the following factors in determining the weight given a non-treating source opinion: (1) whether the source has examined the

3

claimant; (2) the length, nature, and extent of the source's treatment relationship with the claimant; (3) the supportability of the source's opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the source is a specialist in the relevant medical field; and (6) other factors that might support or contradict the opinion. 20 C.F.R. § 404.1527(c).

Upon review of the record, the Court finds that the ALJ's decision not to give greater weight to Dr. Blevins' report is supported by substantial evidence. The record indicates Dr. Blevins examined Hayes only once, and Dr. Blevins never treated Hayes. (Tr. 907.) The Magistrate Judge determined—and the parties do not contest—that Dr. Blevins is a family medicine practitioner, not a specialist. (Doc. No. 19 at 20.) Furthermore, the ALJ determined that Hayes "has the following severe impairments: fibromyalgia, heart, thyroid, sciatic, nerve, [sic] pulmonary, back, heart, esophagus, and hypertension." (Tr. 21.) In light of Hayes' extensive list of ailments affecting diverse body systems, and the fact that Dr. Blevins had an opinion on all of Hayes' complaints, Dr. Blevins could not have been acting as a specialist at the time of his examination. (*See* Tr. 907, 909.) Accordingly, Dr. Blevins' opinion was entitled to little, if any, weight under factors one, two, and five.

The ALJ noted that Hayes visited Dr. Blevins "through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor apparently received monetary payment for the report. Although [Dr. Blevins' report] . . . deserves due consideration, the context in which it was produced cannot be entirely ignored." (Tr. 22.) "There is nothing fundamentally wrong with a lawyer sending a client to a doctor," *Blankenship v. Bowen*, 874 F.2d 1116, 1122 n.8 (6th Cir. 1989), thus the fact that Hayes' attorney referred her to Dr. Blevins cannot itself justify the ALJ's decision not to give weight to Dr. Blevins' medical opinion; however, the ALJ is entitled to consider the circumstances of

Hayes' consultation with Dr. Blevins in addressing factor two, the extent and nature of the source's relationship with the claimant. Here, the facts cited by the ALJ illustrate that Hayes visited Dr. Blevins once, not for treatment, and therefore that Dr. Blevins' opinion is entitled to little weight under factor two.

An opinion's "supportability" refers to the extent to which the source "presents relevant evidence to support an opinion, particularly medical signs and laboratory findings" and provides "supporting explanations" for his opinions. 20 C.F.R. § 404.1527(c)(3). With the exception of a Range of Motion evaluation conducted during the examination (Tr. 915–16), Dr. Blevins presented no "medical signs and laboratory findings" in support of his findings, nor is there evidence that he relied on tests or other evidence prepared by other medical sources (*see* Tr. 907–10). To the contrary, Dr. Blevins apparently relied almost exclusively on Hayes' reports of her symptoms and past diagnoses in forming his opinion. Moreover, Dr. Blevins provided no "supporting explanations" for his opinions other than restatements of Hayes' complaints. (Tr. 912–14.) Dr. Blevins' opinion is therefore not entitled to weight under factor three.

Finally, Dr. Blevins' opinion is inconsistent with the record as a whole. Upon examination of the record, Magistrate Judge Brown found that

> Generally speaking, the medical records . . . fall into two basic categories. First, there are doctors' diagnoses, impressions, and assessments based on what plaintiff told them . . . Second, there are laboratory/clinical tests/evaluations related to those diagnoses . . . A fair assessment of the two is that, although the diagnoses, impressions, and assessments support plaintiff's medical claims on their face, the related laboratory/clinical tests/evaluations do not. More particularly . . . the related laboratory/clinical tests/evaluations were unremarkable, normal or negative in virtually every instance.

(Doc. No. 19 at 20.) This Court concurs with the Magistrate Judge's assessment that nearly all of Hayes' evaluations were normal or negative[2] but notes that Hayes' impairments include fibromyalgia (Tr. 21), and "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs . . . [so] objective tests are of little relevance in determining the existence or severity of fibromyalgia." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988) (per curiam)). In fact, "[t]he process of diagnosing fibromyalgia includes . . . the ruling out of other possible conditions through objective medical and clinical trials," thus the existence of a series of negative or normal test results may support Hayes' claim of disability stemming from fibromyalgia. *Id.* at 244; *see infra*.

However, many of the other diagnostic impressions Dr. Blevins listed are susceptible to detection through objective testing, yet Hayes' medical records either do not support the existence of these conditions, or do not support the severity of Dr. Blevins' diagnoses. For instance, Dr. Blevins found Hayes had both chronic obstructive pulmonary disease and chronic restrictive pulmonary disease (Tr. 909), but Hayes' chest x-rays reveal only "a small calcified granuloma in the lower left lobe" that has been stable over time and "no definite acute cardiopulmonary disease" (Tr. 799). Dr. Blevins also found Hayes had valvular heart disease,

---

[2] For instance, ultrasounds (Tr. 719, 386) and an x-ray (Tr. 243) of Hayes' lower extremities were all normal; a series of echocardiograms (Tr. 271, 269, 267, 892) have been "essentially normal," as have Hayes' chest x-rays (Tr. 385, 650, 377, 631, 275), spirometry results (Tr. 277), Nuclear Lung Ventilation Perfusion Scan (Tr. 375), cardiac catheterization (Tr. 689–90), and stress test (Tr. 276); an x-ray of her right hip was normal (Tr. 873), while x-rays and MRIs of her spine show only mild degenerative changes (Tr. 875), a mild disc bulge (Tr. 933), and mild disc space narrowing (Tr. 934); an ultrasound (Tr. 259) and CT Scans (Tr. 380, 253) of Hayes' abdomen were all normal, as was an x-ray of her kidney (Tr. 379), a hepatobiliary scan (Tr. 378), and an ultrasound of her gallbladder (Tr. 382), although a later ultrasound showed the "possibility" of dysfunctional gallbladder (Tr. 922); two MRIs of Hayes' brain were normal (Tr. 668, 242), and although a later MRI showed a partially empty sella but was otherwise normal (Tr. 877), her most recent MRI was "normal, [with] no indication for further imaging at this time" (Tr. 922); and two endoscopies revealed some polyps in Hayes' esophagus resulting from gastro-esophageal reflux disease (Tr. 280, 286, 903–06), but x-rays of Hayes' intestines and small bowel were normal (Tr. 639), as was a colonoscopy (Tr. 288).

arteriosclerotic heart disease, and congestive heart failure (Tr. 909), yet Hayes' chest x-rays, echocardiograms, stress test, and cardiac catheterization have all revealed normal heart function, with the exception of mild hypertension (*see, e.g.*, Tr. 890, 894) and only "grade 1 diastolic dysfunction" (Tr. 894).

Therefore, although Dr. Blevins' opinion is consistent with Hayes' complaints, many of his diagnoses are inconsistent with the objective evidence. Accordingly, the ALJ's decision not to give greater weight to Dr. Blevins' opinion is supported by substantial evidence. Hayes' motion on this ground is **DENIED**.

*B. Hayes' Credibility Regarding her Complaints of Pain*

Hayes also objects to the ALJ's determination that her subjective complaints of pain were not credible. The ALJ determined that Hayes' "impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 23) because Hayes' complaints were inconsistent with the medical evidence of record (*see* Tr. 23–25) and because Hayes' "ability to perform such a variety of daily activities tends to negate the credibility of her subjective complaints, especially the degree of pain she maintained she experiences" (Tr. 25). Hayes contends that this determination was error because it was not sufficiently clear, and because the ALJ did not sufficiently address medical records relating to Hayes' fibromyalgia in assessing her complaints of pain. (Doc. No. 20 at 4–5.)

The Court concurs with the Magistrate Judge's finding that the ALJ was sufficiently clear in his credibility determination. This objection hinges on the following sentence: "The degree of the claimant's complaints of pain is credible." (Tr. 25; *see* Doc. No. 20 at 4.) However, as the

Magistrate Judge notes, this sentence is followed by a list of activities Hayes admittedly performs that the ALJ believed were inconsistent with Hayes' description of her degree of pain. (Tr. 25; *see* Doc. No. 19 at 24.) Furthermore, as the Magistrate Judge noted, the ALJ previously wrote that he found Hayes' complaints of pain "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Tr. 23.) The Court agrees with Magistrate Judge Brown that the ALJ's later statement—that Hayes' reported degree of pain "is credible"—is a typographical error, "does not render the credibility finding vague," and in itself "does not impair the substance" of the credibility determination. (Doc. No. 18 at 17–18 (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (holding "harmless error analysis applies to credibility determinations")).)

However, the Court does not concur with the Magistrate Judge's analysis of the substance of the ALJ's credibility determination. "Fibromyalgia, also referred to as fibrositis, is a medical condition marked by chronic diffuse widespread aching and stiffness of muscles and soft tissues." *Rogers*, 486 F.3d at 244 n.3 (internal citation and quotation marks omitted). "The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Id.* at 244. In cases of fibromyalgia, and in many other disability cases, "the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Id.* at 247. In such cases, "a two-part analysis is used in evaluating complaints of disabling pain." *Id.* (citing 20 C.F.R. § 416.929(a)).

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to

consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* (internal citations omitted); *accord Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Although it is the ALJ's prerogative to evaluate witness credibility, the ALJ's determination must "find support in the record. Whenever a claimant's complaints . . . are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant . . . 'based on a consideration of the entire case record.'" *Rogers*, 486 F.3d at 247; *accord Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 434 (6th Cir. 2013). Furthermore, the ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

At step one in the two-part analysis described above, the ALJ noted that Hayes' impairments included fibromyalgia, that Hayes testified "that symptoms of fibromyalgia cause musculoskeletal pain," and determined that Hayes' "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 23.) However, throughout his analysis of Hayes' medical evidence, the ALJ does not describe any of the evidence that specifically relates to Hayes' fibromyalgia diagnosis. For instance, the ALJ's account of Dr. Thuy Ngo's records reveals that Hayes had "pseudo-sciatica and . . . did not require a lumbar MRI . . . was not a candidate for back surgery" and was advised to lose weight. (Tr. 24.) The ALJ's Decision is silent, however, as to the fact that Hayes repeatedly complained to Dr. Ngo of "severe multifocal pain" (Tr. 239, 238, 240, 241), and that Dr. Ngo examined Hayes and found

9

"multiple trigger points" consistent with her preexisting diagnosis of fibromyalgia (Tr. 239). In his account of Dr. Jeff Crosier's records, the ALJ states that Dr. Crosier's "EGD procedure was essentially normal . . . [and a] follow-up abdominal ultrasound showed no significant abnormality." (Tr. 23.) However, the ALJ does not mention Dr. Crosier's assessment that Hayes "is having just incapacitating arthralgias, myalgias, and weakness . . . she is having a lot more problems with muscle weakness and fatigue, which raises the possibility of fibromyalgia syndrome or polymyalgia rheumatic." (Tr. 281.) Although the ALJ describes the series of normal and negative tests results obtained by treating physician David Seitzinger (Tr. 24), the ALJ does not mention Hayes' persistent musculoskeletal and neurological complaints to Dr. Seitzinger (*see* Tr. 294–370, 838). Finally, the ALJ describes the normal and negative test results obtained by Dr. David Henson (Tr. 23), but does not discuss Dr. Henson's finding of myalgia and joint pain (Tr. 883). Furthermore, even though the ALJ describes Hayes' normal and negative test results at length, the ALJ does not recognize the fact that fibromyalgia is diagnosed by ruling out other conditions through objective testing, and therefore that Hayes' history of normal and negative test results, combined with persistent complaints of pain, support her diagnosis of fibromyalgia and a determination that Hayes' subjective complaints of pain are credible. Therefore, the ALJ erred in his credibility determination because his determination was not "based on a consideration of the entire case record." *See Rogers*, 486 F.3d at 247.

At step two in the two-part analysis, the ALJ is required to "evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.*; 20 C.F.R. § 416.929(a). One factor relevant to such an evaluation is "the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms" of fibromyalgia. *Rogers*, 486 F.3d at 247; 20 C.F.R. § 416.929(c)(3)(iv). Dr. Ngo's treatment

records indicate he prescribed Hayes multiple medications to control her pain, including Cymbalta (Tr. 240), Topomax (Tr. 241), Voltaren (Tr. 239), and Mobic (Tr. 238). Hayes testified that her medications do not control her pain. (Tr. 40–41.) The ALJ's determination does not mention these prescriptions or their effects on Hayes. The ALJ also assessed Hayes' reported daily activities and determined

> The claimant cares for personal needs and provides food and water for her three cats and one dog. She prepares simple meals and does light household chores. She washes dishes; sweeps; and cleans her bathtub. She drives a car and shops for groceries. She manages a checkbook and pays her bills. The claimant watches television and reads for enjoyment. She talks on the phone (Exhibit 6E). Her ability to perform such a variety of daily activities tends to negate the credibility of her subjective complaints, especially the degree of pain she maintained she experiences. One would not reasonably anticipate that a person who experiences . . . the degree of pain alleged . . . to be able to tolerate the physical demands, the level of concentration, or the amount of social interaction, necessary to perform many of these activities.

(Tr. 25.) However, the Court finds that these activities are "somewhat minimal" and that "the ALJ's description not only mischaracterizes [Hayes'] testimony regarding the scope of her daily activities, but also fails to examine the physical effects coextensive with their performance." *Rogers*, 486 F.3d at 248–49. For instance, Hayes cannot get out of a car "without a struggle" because of pain (Tr. 170), can only take showers—not baths—because she cannot get out of a bathtub (*id.*), the "simple meals" she prepares include "sandwiches" and "can goods" because she cannot stand up long enough in the kitchen to do more (Tr. 171), she "cleans her bathtub" by wiping it with a "stretch stick" because she cannot bend over to clean it (*id.*), and her mother, neighbor, and family members help her with other chores, trips to the store for food, and driving her to doctor's appointments (Tr. 171–73, 37). Moreover, she has a hard time blow-drying and washing her hair because of burning pain in her muscles with movement. (Tr. 40.)

11

Errors in the ALJ's credibility analysis require remand to the Commissioner unless they are "harmless error." *Ulman*, 693 F.3d at 714 (6th Cir. 2012). An error is harmless if, "leaving the problematic reasoning aside," "the rest of the ALJ's reasons support [the credibility] finding." *Riser v. Comm'r of Soc. Sec.*, No. 13-cv-11135, 2014 WL 1260127, at *16 (E.D. Mich. Mar. 26, 2014) (quoting *New v. Colvin*, No. 12-219-ART, 2013 WL 4400522, at *4 (E.D. Ky. Aug. 13, 2013)). The Court finds that the ALJ's credibility determination "fails to contain specific reasons for the finding on credibility, supported by the evidence in the case record, nor is it sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [Hayes'] statements and the reasons for that weight." *Rogers*, 486 F.3d at 249. The only reasons cited by the ALJ are not supported by substantial evidence. Accordingly, none of the ALJ's reasons support his credibility finding, and the error is not harmless. Hayes' motion on this ground is therefore **GRANTED**.

IV. CONCLUSION

The Court finds that the ALJ's credibility determination was not based on a consideration of the entire case record, and that this failure was not harmless error. Hayes' Motion (Doc. No. 14) is **GRANTED** in part, the Magistrate Judge's Report (Doc. No. 19) is **ADOPTED** in part, the ALJ's determination is **VACATED**, and this case is **REMANDED** to the Social Security Administration for a reassessment of Hayes' credibility in light of the evidence of her fibromyalgia and for further consideration of her claims.

It is so ORDERED.

Entered this 20th day of April, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT